# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LEAH FRISSORA,**

        **Plaintiff,**

**-vs-**                                                                  **Case No. 6:13-cv-1638-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's applications for disability benefits. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

## Procedural History

Plaintiff applied for a period of disability and disability insurance benefits and for supplemental security income, alleging that she became unable to work on September 15, 2010, later amended to June 29, 2008 (R. 19). The agency denied Plaintiff's applications initially and upon reconsideration, and she requested and received a hearing before an administrative law judge ("the ALJ"). The ALJ issued an unfavorable decision, finding Plaintiff to be not disabled (R. 16-34). The Appeals Council declined to grant review (R. 1-6), making the ALJ's decision the final decision of the Commissioner.

Plaintiff timely filed her complaint in this action, and the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. The matter has been fully briefed and the case is now ripe for review pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

## Nature of Claimed Disability

Plaintiff claims to be disabled due to "depression, paranoia, bipolar [disorder], learning disability" (R. 207).

*Summary of Evidence Before the ALJ*

Plaintiff was twenty-five years old as of the date of decision, with a high school education[1] and past relevant work as a cleaner, a short order cook, a cashier, a store laborer, a hostess, a waffle baker, and a shop laborer (R. 52, 75-76, 142).

The medical evidence relating to the pertinent time period is well detailed in the ALJ's opinion and in the interest of privacy and brevity will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the medical records of the treating providers, the record includes Plaintiff's testimony and that of her caseworker and a Vocational Expert ("the VE"), written forms and reports completed by Plaintiff and her husband, and opinions from examining and non-examining consultants. By way of summary, the ALJ determined that Plaintiff had the severe impairments of bipolar disorder, attention deficit hyperactive disorder (ADHD), and a history of polysubstance abuse (20 CFR 404.1520(c) and 416.920(c)) (R. 22); and the record supports this uncontested finding. The ALJ determined that through the date of the decision (March 30, 2012), the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 22-24). The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform:

> a full range of work at all cxertional levels but with the following nonexertional limitations: she can perform simple routine tasks, there can be occasional change in the work setting, and no travel to unfamiliar places as part of the work. Periods of concentration are limited to 2 hours at a time before needing a regular work break; and there can be only occasional contact with the general public, coworkers, and supervisors.

---

[1] There is contradictory evidence in the record as to Plaintiff's level of education. She reported a tenth grade education, in special classes (R. 208), but was then home-schooled (R. 51). She testified: "I got a high school diploma" (R. 52).

(R. 24).

The ALJ determined that Plaintiff could return to her past relevant work as a store laborer and as a cleaner (R. 28). Further, with the assistance of the Vocational Expert, the ALJ found that other work existed in significant numbers that Plaintiff could perform (R. 29-30), and therefore, the ALJ found Plaintiff was not disabled.

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff raises several issues for review, contending that: 1) the ALJ failed to give proper weight to the opinions of Plaintiff's treating psychiatric providers by not adequately addressing Plaintiff's history of low GAF[2] scores; 2) substantial evidence does not support the finding that Plaintiff can perform work when the Plaintiff's medical records indicate that Plaintiff manifested symptoms of her mental disorders even when medicated; 3) the ALJ "ignored" salient portions of the record; and 4) the Appeals Council erred in denying review and in failing to adequately evaluate "new evidence." The Court examines these objections in the context of the sequential evaluation applied by the ALJ.

*The five step assessment*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Other than the final contention with respect to the standard governing Appeals Council actions, Plaintiff's objections go

---

[2]Global Assessment of Functioning ("GAF").

to the formulation of the RFC (steps two and three), where the burden of persuasion rested with Plaintiff.

*Weighing the Opinions of Treating Physicians*

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).)

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997)*; Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not

warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).

*The GAF scores*

Plaintiff contends that the ALJ erred "by failing to give proper weight to the Opinion of Plaintiff's Treating Psychiatric Facility, Park Place Behavioral Healthcare." (Doc. 24, p. 11).[3] According to Plaintiff, her treatment notes indicate that she received GAF scores of 41 in March and April of 2010, GAF scores of 45 in June 2010 through November 2011, with one score of 50 in May 2011, and this history "clearly demonstrates a severe mental impairment which prevents Plaintiff from performing work." Plaintiff claims the ALJ erred in focusing on only one score of 45 and did not adequately explain why the consultative GAF score of 52 was given more weight than the numerous GAF scores of 50 or below.

> The ALJ addressed the treatment notes of Park Place Behavioral Heathcare at length, noting:
>
> The claimant presented at Park Place Behavioral on a voluntary basis in March of 2010, *at which time she reported she was not taking any medications*. The claimant reported she was experiencing mood swings, anxiety, anger, irritability, racing thoughts, increased energy, insomnia, and impulsive behavior and that she had just been released from jail due to battery. She reported she had not used any drugs in 29 months. She had attended detoxification programs in the past, but that she had never received inpatient treatment for mental health. Prior noncompliance with treatment

---

[3]As a practical matter, a "facility" is not a treating physician. Plaintiff's care at this facility was provided by various professionals, not all of whom are physicians. Not all medical providers are viewed equally. The regulations provide that evidence from "acceptable medical sources" is needed to establish the existence of an impairment. *See* 20 C.F.R. § 404.1513(a). Nurse practitioners and physician's assistants are not considered to be "acceptable medical sources" but are considered to be "other sources." 20 C.F.R. §§ 404.1513(a), (d)(1). Under the regulations, evidence from nurses, physician's assistants, and other non-acceptable medical sources cannot establish the existence of a medically determinable impairment, but an ALJ can use evidence from these other sources to show the severity of a claimant's impairments and how the claimant's impairments affects the claimant's ability to work. *See* 20 C.F.R. §§ 404.1513(a), (d)(1); *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004); *see also Lawton v. Commissioner of Social Sec.*, 431 Fed.Appx. 830, 833 (11th Cir. 2011) ("In order for a statement to be characterized as a "medical opinion," it must be from an acceptable source and address acceptable subject matter. 20 C.F.R. § 404.1527(a)(2).")

> was noted. Upon examination, the claimant's intellectual functioning was deemed average, her thought content was appropriate, her thought processes were logical and coherent, and she was oriented in all spheres. Her attention and concentration were deemed fair, and her anxiety was mild. The claimant was diagnosed with a bipolar disorder, GAF 41. She was referred to a medication clinic for evaluation and treatment (Exhibit 4F). She restarted a medication regimen with Park Place Behavioral with some improvement in anxiety on medication (Exhibit 5F).

(R. 25-emphasis added).

> Mental health treatment notes indicate worsening symptoms in October and November 18, 2010; the claimant reported anger outbursts, crying spells and racing thoughts. However, with medication changes, by January 11, 2011, the claimant reported she was doing better, sleeping well, and that her depression and anxiety had decreased. The claimant was oriented in all spheres, and her speech was coherent. Her thought processes were logical, and her mood was anxious but appropriate. While memory and concentration were deemed poor, the claimant's insight and judgment were intact (Exhibit 9F). On June 26, 2011, the claimant again reported she was doing well, that she was having less mood swings, and that her depression and anxiety had decreased. She reported she was taking care of her baby, had a good appetite, was sleeping well, and was interacting with her family. Her concentration, memory, and attention were noted to be fair, her thought processes were logical, and the claimant's ability to express herself was noted as a personal strength (Exhibit 15F). Notes from November 1, 2011, reflect that the claimant had missed a previous appointment and was out of medication. However, she was oriented in all spheres, and her memory, concentration, and attention remained fair (Exhibit l6F).

(R. 26).

After throughly reviewing all of the other evidence, including the consultative examination findings, mental status findings, the witness testimony, and claimant's testimony and reported activities, the ALJ concluded:

> The undersigned notes that treatment notes from Park Place Behavioral reflect that examiners assigned global assessment of functioning (GAF) scores of 45, *which are reflective a serious level of symptoms and/or difficulty functioning.* However, these scores are not consistent with the mostly benign mental status evaluation findings described above, the improvement noted in the claimant's symptoms, and the claimant's reported functioning, including regular outings with a friend. The consultative examination GAF score of 52 is more reflective of the moderate limitations reflected in the claimant's record as a whole. The consultative examiner indicated that the claimant's functioning was significantly limited with poor social functioning, but also noted that she was cooperative with euthymic mood. Furthermore, the claimant testified to ongoing socialization. Significant limitations have been assessed in the residual functional capacity assessment consistent with the

-7-

>claimant's moderate limitations as reflected in the record as a whole as well as her activities of daily living, and continued socializing.

(R. 27-emphasis added).

To the extent Plaintiff appears to be arguing that the ALJ must discuss each of the 13 scores individually, she is in error.   There is no requirement that an ALJ refer to every piece of medical evidence in the record as long as the decision is not so broad that it fails to allow a reviewing court the ability to determine if the ALJ considered a plaintiff's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1210-1211 (11th Cir. 2005) (*citing Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir.1995)).

Nor is the Court persuaded that the ALJ did not adequately weigh the scores. As indicated in the excerpts above, the ALJ plainly considered and reviewed Plaintiff's entire medical condition, including all treatment notes, and gave a full rationale, supported by the substantial evidence cited, for her conclusions.  Although the ALJ directly cited to the several GAF scores of 45 in her opinion evidence assessment (R. 27), she acknowledged the low-end GAF score of 41.  As all of the scores on which Plaintiff's argument relies fall within the same range of 41-50- reflecting serious symptoms or limitations – and the ALJ acknowledged that Plaintiff's GAF scores reflect serious symptoms or difficulties in functioning (R. 27), no error is shown.[4]  Because the scores were adequately considered by the ALJ, there is no error in failing to explicitly "weigh" each score. *See Diamond v. Colvin*, No. 3:12–cv–983–J–34MCR, 2013 WL 6231261, at *11-12 (M.D. Fla. Dec. 2, 2013) (stating that "[a]bsent unusual circumstances, courts have generally declined to find reversible error where an ALJ failed to discuss a claimant's GAF scores or indicate the weight accorded to them").

*Plaintiff's response to treatment and the ALJ's citation to evidence*

---

[4] Plaintiff's citation to *McCloud v. Barnhart*, 166 Fed.Appx. 410, 418 (11th Cir. 2006) does not persuade the Court otherwise.  In that case, the ALJ misinterpreted a GAF score of 45 as being reflective of moderate symptoms.  Here, no such misinterpretation occurred and the ALJ acknowledged the serious symptoms the score reflects.

Plaintiff contends that she still displays significant limitations in spite of receiving medications. Plaintiff also complains that the ALJ misrepresented her level of functioning, and ignored her testimony of numerous "attacks;" that she could not leave the house, sleep, eat, concentrate or do chores; that her husband and mother helped care for her son; and that she could not manage her finances.

Plaintiff is contending that substantial evidence does not support the ALJ's finding that Plaintiff was doing better, as her treatment notes continued to indicate symptoms even when she was medicated. This contention misses the mark. The ALJ did not find (and it is not the ALJ's burden to establish) that Plaintiff had improved to the point of having no symptoms. Rather, the ALJ found that Plaintiff did not meet her burden to establish that her symptoms were disabling.

As throughly discussed by the ALJ, Plaintiff's treatment notes present a mixed picture. The ALJ acknowledged worsening symptoms in October and November 18, 2010, with Plaintiff reporting anger outbursts, crying spells and racing thoughts (R. 26), but also noted findings that Plaintiff was fully oriented, her speech was coherent, her thought processes were logical, her mood was anxious but appropriate and, while her memory and concentration were poor, her insight and judgment were intact (R. 26, 552). The ALJ also noted Plaintiff's reports of improvement with decreased depression and anxiety (R. 26), and findings that her concentration, memory and attention were fair, and her thought processes were logical (R. 26, 550). November 2011 notes reflect that Plaintiff was fully oriented with fair memory, concentration and attention, her thoughts were logical, and her mood and affect were pleasant (R. 26, 556). The ALJ also cited Plaintiff's own statements in her mental health records that she was "doing better" and "doing well" (R. 26, 550, 552). "[C]hoosing between conflicting evidence is a task particularly suited to the fact finder." *Landry v. Heckler*, 782 F.2d 1551, 1554 (11th Cir.1986). The ALJ evaluated this conflicting evidence and tailored the RFC to

accommodate the significant limitations she found to exist. As that finding is supported by the substantial (although not uniform) evidence cited, no error is shown.

Although the ALJ need not discuss each piece of evidence, the ALJ discussed Plaintiff's allegations of limitations in her decision and found "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 25). Plaintiff does not challenge this credibility finding.

With respect to reports that Plaintiff felt she could not leave the house, sleep, eat, concentrate or do chores, the ALJ noted that Plaintiff reported that she helps care for her son, shops and cleans house, and she sees a friend often to take their children to the park and various activities (R. 22, 24-25). Although Plaintiff complains that the ALJ ignored Plaintiff's reports of paranoia and fear of going outside, the ALJ noted this fear (R. 24), but also noted that Plaintiff drove herself to the consultative examination (R. 23) and reported going out with a friend often.[5] Moreover, the ALJ specifically acknowledged Dr. Austin's statement that Plaintiff's functional ability was significantly impaired due to mood swings, hyperactivity and social withdrawal and her social functioning was poor (R. 26-27, 384). However, as the ALJ noted, Dr. Austin's GAF score of 52 indicated these impairments were moderate ( R. 385). The record does not support a contention that any evidence was "ignored."

To the extent Plaintiff's contention appears to suggest that the evidence could support a different finding, it is not the task of the Court to reweigh the evidence. "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts

---

[5]The ALJ also noted that Plaintiff lost her license due to a DUI. Plaintiff testified: "I never drink and drive. And I did one time and it was that holiday they had in November with the soldiers or whatever and we had a big barbecue and I had a couple of drinks and this girl kept begging me to take her to the store and of course I did and I was pulled over with a DUI. And that's how I lost my license."(R. 72).

anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n. 8 (internal quotation and citation omitted). As that standard is met here, the decision should not be disturbed.

*The Appeals Council and the "new" evidence*

Plaintiff next objects to the Appeals Council's evaluation of what she contends is "new and material" evidence. As noted by the Eleventh Circuit:

> A social security claimant generally is permitted to present new evidence at each stage of the administrative process. See 20 C.F.R. §§ 404.900(b), 416.1470(b); *see also Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council has the discretion not to review the ALJ's denial of benefits. 20 C.F.R. §§ 404.967, 416.1467. However, the Appeals Council must consider "new and material evidence" that "relates to the period on or before the date of [the ALJ] hearing decision" and must review the case if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §§ 404.970(b), 416.1470(b).

*Timmons v. Commissioner of Social Sec*., 522 Fed.Appx. 897, 902 (11th Cir. 2013).

Plaintiff argues that she presented new and material evidence to the Appeals Council in the form of reports from a treating provider, and the Appeals Council failed to show in its written denial that it had adequately evaluated the evidence, as required by *Epps v. Harris,* 624 F. 2d 1267 (5th Cir. 1980).

The evidence in question are reports dated February 7, 2012, to February 1, 2013 (R. 557-90). The Appeals Council referenced the reports by noting that it "considered . . . the additional evidence listed" and "found that this information does not provide a basis for changing the Administrative Law Judge's decision." (R.1, 2). Plaintiff argues that this evaluation is merely perfunctory and does not adhere to the *Epps* standard, and, as there is a reasonable possibility that the evidence would change the administrative outcome, remand is required. The Court does not agree.

To the extent Plaintiff argues that the Appeals Council was required to enter more specific findings about these records and explain why the new evidence did not alter the ALJ's decision,

-11-

controlling authority is to the contrary. When, as here, the Appeals Council denies a request for review, it is not required "to provide a detailed discussion of a claimant's new evidence" and "is not required to explain its rationale for denying a request for review." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 783-784 (11th Cir. 2014) (distinguishing *Epps*). In another *per curiam* opinion, the Eleventh Circuit summarized the Appeals Council's obligations in evaluating newly submitted evidence:

> The Appeals Council must adequately evaluate the new evidence. *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir.1980). Where the Appeals Council does not adequately evaluate new evidence, but instead perfunctorily adheres to the ALJ's decision, the Commissioner's findings are not supported by substantial evidence. *Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir.1984).
>
> Apart from the Appeals Council's decision, we review *de novo* the district court's judgment. *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir.2007). When new evidence is submitted to and accepted by the Appeals Council and it denies review, the district court conducts a new review of the evidence independently of the Appeals Council. *Id.* at 1266. The district court must consider the new evidence submitted to the Appeals Council and determine whether the Commissioner's decision is contrary to the weight of the evidence currently of record. 20 C.F.R. § 404.970(b); *Id.* **"[B]ecause a reviewing court must evaluate the claimant's evidence anew, the [Appeals Council] is not required to provide a thorough explanation when denying review."** *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (*per curiam*) (*citing Ingram*, 496 F.3d at 1262).[]

*Caces v. Commissioner, Social Sec. Admin.*, No. 13-11466-DD, 2014 WL 1243813, *4 (11th Cir. March 27, 2014) (unpublished),[6] *citing*, in footnote, *Mansfield v. Astrue*, 395 Fed. Appx. 528, 530 (11th Cir. 2010) (*per curiam*) (holding same) and *Robinson v. Astrue*, 365 Fed. Appx. 993, 997 (11th Cir. 2010) (*per curiam*) (determining that Appeals Council did not err in failing to make specific findings).

Plaintiff claims that there is a reasonable probability that the outcome would change because:

1) From February 7, 2012 through May 6, 2013, the Plaintiff presented to Park Place Behavioral Healthcare seven times. Of those seven times, Park Place gave the Plaintiff

---

[6]Unpublished decisions of the Eleventh Circuit are not binding precedent. *See* 11th Cir. R. 36–2. The decision is cited for its persuasive authority. The emphasis was added.

-12-

>a Global Assessment of Functioning score on four occasions. On every occasion, the Plaintiff's Global Assessment of Functioning score was 45 (R. 567, 574, 585, 590);
>
>2) The Plaintiff was prescribed additional antipsychotic medication and additional medication to treat her conditions; and
>
>3) Despite being on prescribed medication, on April 20, 2012, the Plaintiff's mental status exam revealed an irritable hyperaffect and anxious mood (R. 562). Despite being on prescribed medication, on July 24, 2012, the Plaintiff's mental status exam revealed poor judgment (R. 573).

Upon independent review, the Court concludes that the reports would not have changed the ALJ's conclusion.

As noted by the Commissioner, nearly all of the evidence post-dates the ALJ's March 30, 2012 decision and there is no indication that the evidence relates back to the time at issue. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b).[7] The sole treatment record during the time under consideration by the ALJ is a February 7, 2012, medication management visit with Plaintiff's nurse practitioner (R. 559-560). This visit revealed that Plaintiff was "out of lamictal," and "non-compliant with meds." Examination revealed that Plaintiff was casual and anxious with coherent speech; fully oriented; sad about her pending court date for the DUI, angry, restless and irritable. *Id.* She denied hallucinations and had logical cognitive performance with an "ok" memory and concentration, poor insight and judgment, average intelligence; and her personal strengths were that she could express herself. *Id.* This report establishes that, when not on her medication, Plaintiff has mixed symptoms. Such a report is not "new" and non-cumulative, and is not inconsistent with prior records.

The Court finds that the Appeals Council did not err in denying review in light of this evidence. The Appeals Council adequately considered the evidence and found that it did not provide a basis for changing the ALJ's decision. In her decision, the ALJ discussed the treating records and

---

[7]Even if the Court were to consider the latter records, the numerous GAF findings of 45 are completely consistent with prior records and do not provide any "new" information.

set forth a reasoned rationale supporting the RFC. As this Court agrees that the Commissioner's decision is not contrary to the weight of the evidence currently of record, no error is shown.

A final note is in order. Although it is evident that Plaintiff has challenges and difficulties on many fronts, the only issue before the Court is whether the decision by the Commissioner is adequately supported by the evidence and was made in accordance with proper legal standards. As the Court finds that to be the case, the decision must be affirmed.

## Conclusion

For the reasons set forth above, the administrative decision is **AFFIRMED.** The Clerk is directed to enter judgment accordingly, terminate all pending matters, and close the file.

**DONE** and **ORDERED** in Orlando, Florida on February 4, 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record